UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

     -against-                              **20 Civ.6175 (JHR)**

JACK BREWER,

                Defendant.

_____

## DEFENDANT JACK BREWER'S MEMORANDUM OF LAW IN OPPOSITION FOR REMEDIES

Lee A. Hutton, III
THE HUTTON FIRM, PLLC
333 South Seventh Street
Suite 2150
Minneapolis, Minnesota 55402
(612) 805-4619
lhutton@thehuttonfirm.com
Attorneys for Defendant

October 20, 2025

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**………………………………………………………3

**INTRODUCTION**………………………………………………………....…..5

**BACKGROUND FACTS**…………………………………………………..5

**ARGUMENT**…………………………………………………………..6

    I.     The Remedies Must Be Reasonable and Proportionate………………………..6

    II.    The Court Should Not Award Prejudgment Interest…………………………..9

    III.   The Court Should Not Impose Civil Penalties………………………………..10

    IV.   The Court Should Not Impose Permanent Injunctions………………………13

    V.    The Court Should Deny Injunction Against Association With Broker, Dealer and Investment Advisor…………………………………………………17

    VI.   The Court Should Deny Penny Stock Bar Request…………………………...17

**CONCLUSION**…………………………………………………………19

# **TABLE OF AUTHORITIES**

*Cases*

*Liu v. SEC*, 140 S.Ct. 1836 (2020)…………………………………………………..….6

*SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008)……………………………………15

*SEC v. Almagarby*, 92 F.4th 1306, 1325 (11th Cir. 2024)…………………………………….5

*SEC v. Becker*, No. 09 Civ. 5705 (SAS), 2010 WL 2710613, at *1 (S.D.N.Y. Jul. 8, 2010)……15

*SEC v. Capital Solutions Monthly Income Fund*, LP, 28 F. Supp. 3d 887, 897 (D. Minn. 2014)...6

*SEC v. Gentile*, 939 F.3d 549, 559 (3d Cir. 2019)……………………………………14

*SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023)…………………………………………...7

*SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1476 (2d Cir. 1996)………………………9

*SEC v. Findley*, 3:20-cv-0397 (SRU), 2024 WL 707264…………………………...………7

*SEC v. Lemelson*, 596 F. Supp. 3d 227 (D. Mass. 2022), aff'd sub nom. 57 F.4th 17 (1st Cir. 2023), cert. denied sub nom. 144 S. Ct. 486 (2023)……………………………………..16

*SEC v. Manor House Ctrs., Inc*., 458 F.2d 1082, 1102 (2d Cir. 1972)…………………………..14

*SEC v. Markusen*, Civ. No. 14-3395 (MJD/TNL), 2016 WL 1629267……………………...…7

*SEC v. Johnson*, 595 F. Supp. 2d 40, 45 (D.D.C. 2009)……………………………………12

*SEC v. Quan*, No. CIV. 11-723 ADM/JSM, 2014 WL 4670923, at *16 (D. Minn. Sept. 19, 2014), amended, No. CIV. 11-723 ADM/JSM, 2014 WL 6982914 (D. Minn. Dec. 10, 2014), aff'd, 817 F.3d 583 (8th Cir. 2016)……………………………………………………10

*SEC v Shanahan*, No. CIV.07-2879 (JNE/JJG), 2010 WL 173819 at *15 (D. Minn. Jan. 13, 2010)………………………………………………………………...…13

*SEC v. Teo*, 746 F.3d 90, 105, 107 (3d Cir. 2014), cert. denied, 135 S. Ct. 675 (2014)………….9

*SEC v. Universal Exp*., Inc., 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007)…………………15

*SEC v. Wyly*, 56 F. Supp. 3d 260, 268 (S.D.N.Y. 2014)………………………………..…7

***Statute and Rules***

§ 78u(d)(5)……………………………………………………………………………...8

§10(b) Securities and Exchange Act……………………………………………..……13

Rule 10-b5………………………………………………………………………..13

***Secondary Sources***

https://www.sec.gov/Archives/edgar/data/1383154/000118518517002108/ex99-

1.htm#:~:text=NEW%20ORLEANS%2C%20LA%20%E2%80%93%20October%204,return%2

0to%20a%20stable%20future..........................................................................................6

Pursuant to the Court's July 10, 2025 Order (Dkt. # 94), Defendant Jack Brewer ("Brewer") respectfully submits this memorandum of law in opposition to Plaintiff Securities and Exchange Commission ("SEC") motion for remedies ("Motion") as to Brewer. For the reasons discussed below, Brewer respectfully requests that this Court deny the SEC's remedies motion.

## INTRODUCTION

This is not a securities fraud case. The conduct in this case did not involve fraud, deceit, lying, cheating, or stealing money from investors. Rather, the conduct involved a good-faith belief that Brewer complied with all applicable laws. In fact, Brewer himself did not make the alleged violative transaction and had his brokerage company Morgan Stanley advising him on what shares to sell and when to sell them. Moreover, Brewer lost money on the alleged sell which according to the SEC was a $35,178.00 gain. The penalties and interest sought by the SEC more than double the amount that they allege Brewer manipulated in the market. (Dkt. #97; "Motion").

Ultimately, the Court summarily ordered that Brewer violated Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. Brewer disputes and for the purposes of this motion argues that the alleged violation(s) "does not support a finding of egregiousness". *SEC v. Almagarby*, 92 F.4th 1306, 1325 (11th Cir. 2024). Like so many market participants involved, Brewer had no reason (or fair notice) of the price being set by the market at the time of the trade because it was not published to the market. (Declaration of Jack Brewer, Page 1, Line 4.

## BACKGROUND FACTS

Despite Brewer having "possessed extensive knowledge regarding securities practice", Brewer maintained and used his personal broker who identified to him which shares to sell and

not sell as evidenced in Dkt. #82-2.  (Brewer Decl., Page 1, Line 5). Brewer's relationship with

COPsync[1] was a marketing person identified as an endorsement agreement. (Dkt. #90, at 5-6.).

COPsync later filed for bankruptcy. (Brewer Decl. Page1, Line 6.). Brewer was the largest

creditor. Id.

## ARGUMENT

### I. The Remedies Must Be Reasonable and Proportionate.

The SEC's requested remedies — including disgorgement, prejudgment interest, civil

penalties, and broad industry bars — must be grounded in equity and tailored to the conduct at

issue. *Liu v. SEC*, 140 S.Ct. 1836 (2020). The Supreme Court in *Liu v. SEC*, 140 S. Ct. 1936

(2020), emphasized that equitable relief such as disgorgement must not exceed the defendant's

net profits and must be reasonably related to actual wrongdoing. Id.  Courts have repeatedly

cautioned that SEC remedies are not punitive but remedial in nature.

#### A.  The Court Should Not Award Disgorgement.

The SEC is not automatically entitled to a disgorgement award. Rather, "[t]he

district court has 'broad discretion' in both determining whether or not to order disgorgement

and in calculating the appropriate amount to be disgorged." *SEC v. Capital Solutions Monthly

Income Fund*, LP, 28 F. Supp. 3d 887, 897 (D. Minn. 2014) (citing cases). When the SEC seeks

disgorgement, however, the SEC bears the burden of proving a "reasonable approximation of

gains that are causally connected to a violation." Id. (citing cases). In other words, "[i]t is the

SEC's burden to establish both a reasonable approximation of profits and the causal connection

---

[1] Due to no act of Brewer, COPsync is d-listed.  See
https://www.sec.gov/Archives/edgar/data/1383154/000118518517002108/ex99-
1.htm#:~:text=NEW%20ORLEANS%2C%20LA%20%E2%80%93%20October%204,return%2
0to%20a%20stable%20future.

between the approximation and the violations." *SEC v. Wyly*, 56 F. Supp. 3d 260, 268 (S.D.N.Y. 2014) (emphasis in original) (rejecting SEC's request for disgorgement for failing to meet its evidentiary burden). Only if the SEC first satisfies its burden of establishing a reasonable approximation of profits causally connected to the violation, does "the burden [then] shift to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation," *SEC v. Markusen*, Civ. No. 14-3395 (MJD/TNL), 2016 WL 1629267, at *13 (D. Minn. April 25, 2016) (citation omitted), or that "the SEC's calculation is inaccurate, or that some of the gains were not the result of wrongdoing," *SEC v. Findley*, 3:20-cv-0397 (SRU), 2024 WL 707264, at *6 (D. Conn. Feb. 21, 2024) (citation omitted), notice of appeal filed April 19, 2024.

The SEC seeks disgorgement against Brewer in the amount of $35,178.00. The SEC calls this the net gain from Brewer's stock sell. The Court should deny the SEC's disgorgement claim for several reasons. First, the SEC's disgorgement claim fails the U.S. Supreme Court's victim benefit test set forth in *Liu v. SEC*, 591 U.S. 71 (2020). The SEC has not identified a victim who suffered pecuniary harm that was caused by Brewer's sale. Second, the SEC fails to show that the disgorgement it seeks is causally connected to Brewer's stock sell that was at a loss. The SEC makes no mention of the *Govil* case. But as *Govil* teaches, financial harm to investors cannot be presumed. Rather, the SEC needs to come forward now with evidentiary support to show "the type of securities held, the terms of those securities, and when those securities were sold [by investors]" because investors might have earned a profit on their investment notwithstanding the defendant's registration violation. *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023)*;* 86 F.4th at 104, n.16. As pointed out above, *Liu* holds that the SEC must prove that the disgorgement it seeks will be distributed to victims. *Liu's* victim benefit requirement is a prerequisite for obtaining disgorgement. For Liu's victim benefit requirement to have any meaning, the SEC should not be

permitted to choose to "give money to the Treasury" or who should receive disgorgement and to by-pass the burden of proof to claim damages. Specifically, In *Liu*, the Supreme Court held, among other things, that any disgorgement the SEC seeks must be awarded to injured investors: "[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." 591 U.S. at 74 (emphasis added). Therefore, "[o]ne of the equitable limitations identified in Liu is that disgorgement must be 'awarded for victims.'" *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023) (citations omitted; emphasis added). "[T]he Liu Court emphasized that such an equitable remedy is about 'return[ing] the funds to victims,'" (Id. at 103), and this "requires that the [disgorgement] relief be 'awarded for victims,' and that in turn requires a finding of pecuniary harm," (Id. at 106) (citations omitted).

Explicitly, in *Govil*, the Second Circuit recognized that *Liu's* victim benefit requirement means that the SEC must identify victims of defendants' misconduct who actually suffered pecuniary harm before the Court can award disgorgement to the SEC. Because the SEC failed to satisfy *Liu's* victim benefit requirement, the *Govil* Court vacated the district court's disgorgement award and remanded the case for further proceedings on the victim benefit issue. The Second Circuit held that "[t]he district court abused its discretion by ordering disgorgement without finding that the defrauded investors suffered pecuniary harm. We vacate the judgment of the district court and remand with instructions to make that factual determination." Id. at 111.

The SEC's disgorgement claim against Brewer also fails Liu's victim benefit test. It fails because the SEC's submissions do not identify any investors who suffered pecuniary harm that was caused by Brewer's investment activities. Absent proof of a causal connection between Brewer's violation(s) and investors' pecuniary harm, the phantom investors cannot be considered "victims" of Brewer's misconduct. See *Govil*, 86 F.4th at 98 ("An investor who suffered no

pecuniary harm as a result of the fraud is not a victim.") (emphasis added). At best, the SEC pay "lip-service" to *Liu's* victim benefit requirement but "admits that distribution to disgorged funds to harmed investors is not feasible here." (Dkt. #97, SEC Mem. At Law 9 (footnote).

### B. No Causal Connection and Disgorgement Claims Fails.

The SEC's disgorgement claim also fails for the independent reason that the SEC offers insufficient evidence to prove the required causal connection (or link) between Brewer's stock sale and from its investment activities. The causal connection for disgorgement is a "but-for" standard. *SEC v. Teo*, 746 F.3d 90, 105, 107 (3d Cir. 2014), cert. denied, 135 S. Ct. 675 (2014).

Here, the SEC has failed to prove that "but for" the sale of the stock, Brewer would not have generated the same "gain". Because this investment activity was based upon a price not know to the market or Brewer himself at the time of the trade it is logically to conclude that the Brewer did not know the price to be connected to any generated revenues. In other words, the result would have been the same with or without Brewer selling the shares as the company. Here, there simply is no causal connection between the stock sale generated from the investment activity. Also, the fact that the SEC did not investigate Morgan Stanley Advisors who actually made the trade and advised on it is peculiar enforcement.

### II. The Court Should Not Award Prejudgment Interest.

Should the Court decide to award the SEC disgorgement, the Court should exercise its discretion to deny to the SEC's claim for prejudgment interest. An award of prejudgment interest lies within the discretion of the Court. *SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1476 (2d Cir. 1996). In deciding whether to award prejudgment interest, the Court should take into account, among other things, "considerations of fairness and the relative equities of the award."

Id. (listing factors for consideration of prejudgment interest award). As discussed below, Brewer's entire life has been harmed due to this enforcement and has limited financial means to pay prejudgment interest on top of a disgorgement award.

Therefore, considerations of fairness and the equities favor the Court denying the SEC's claim for prejudgment interest.

### III. The Court Should Not Impose Civil Penalties.

The SEC also seeks civil penalties against Brewer in the amount of $105,534.00 which "represents three times the amount of Brewer's unlawful gains" according to the SEC. The SEC arbitrarily claims that this total penalty amount is appropriate. For the reasons discussed below, the Court should deny the SEC's request for civil penalties.

### A. Civil Penalties Are Not Warranted Under the *Markusen* Factors.

The SEC is not automatically entitled to civil penalties. Rather, "Courts have broad discretion in imposing civil penalties, and need not impose any penalty if it determines a penalty would not be appropriate under the circumstances." *SEC v. Quan*, No. CIV. 11-723 ADM/JSM, 2014 WL 4670923, at *16 (D. Minn. Sept. 19, 2014), amended, No. CIV. 11-723 ADM/JSM, 2014 WL 6982914 (D. Minn. Dec. 10, 2014), aff'd, 817 F.3d 583 (8th Cir. 2016) (declining to impose civil penalty).

In assessing whether civil penalties are appropriate, the district courts in the 8th Circuit look to a number of factors including: (1) the egregiousness of the violation; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the deterrent effect given the defendant's financial worth; (5) whether the defendant has admitted wrongdoing; (6) the losses or risks of losses caused by the conduct; (7) any cooperation the defendant provided to enforcement authorities; and (8) whether the defendant faces other criminal or civil sanctions and

his or her financial condition. *SEC v. Markusen*, No. CV 14-3395 (MJD/TNL), 2016 WL

1629267, at *14 (D. Minn. Apr. 25, 2016) (citations omitted); see also *SEC v. Capital Solutions*,

28 F. Supp.3d 887, 901 (D. Minn. 2014) (listing civil penalty factors); Quan, 2014 WL 4670923,

at *15 (same). Consideration of the *Markusen* factors weighs in Brewer's favor and against

imposing civil penalties:

    **First Factor: Egregiousness.** Brewer's conduct in failing to register was not egregious

conduct. Rather, the use of "gatekeepers" such as his broker and their inside legal department

who drafting opinions for the sale approval but not underscore fraud or scienter and does not

support a finding of egregiousness." Almagarby, 92 F.4th at 1325. This first factor weighs in

favor of Brewer and against imposing a civil penalty.

    **Second Factor: Repeated Violations.** There was only one transaction alleged that Brewer

was found to have committed. The SEC boasts a lengthy history for Brewer but no evidence of

other wrongdoing. Brewer is simply unblemished. The SEC only has one transaction to pin on

Brewer that resulting in $35,000 of a "gain".

This second factor weighs in Brewer's favor and against imposing civil penalties.

    **Third Factor: Scienter.** The SEC suggests scienter is a factor in this case.  To the

contrary, the Court can analyze the fact that Brewer made all transactions with his broker, sought

their opinion, and relied on them. The transactions also had attorney-opinions to approve the sale

of the shares. While this Court found scienter, the fact that Brewer followed the holding period

Rule 144, used Morgan Stanley to make the trade, and show all good-faith intention to comply

with the law is important to analyze. *Almagarby* at 92 F.4th at 1322 is an example that the

Brewer's "actions cannot fairly be characterized as involving scienter, especially given that he

consulted numerous gatekeepers he followed to procure the transaction none of which raised any flags.

The SEC's request for civil penalties and industry bars presumes scienter — intent to deceive, manipulate, or defraud — yet no such showing has been made. The record reflects at most negligence or a misunderstanding of regulatory requirements, not intentional misconduct.

**Fourth Factor: Deterrent effect given Defendants' financial worth.** Imposing civil penalties would serve no deterrent purpose. The enormous cost and expense to Brewer for having to respond to the SEC's investigation and then litigate this case for more than four years is sufficient deterrence. The SEC's effort to regulate this investment activity through its enforcement has served the intended purpose of deterring Brewer and other market participants from making these transactions. Therefore, this factor weighs in Brewer's favor and against imposing civil penalties. This is especially true given the Brewer's financial condition and inability to pay civil penalties.

**Fifth Factor: Admission of wrongdoing.** SEC argues that civil penalties are warranted because "Brewer also has not demonstrated any remorse and has not accepted any responsibility for his unlawful trading. (Dkt. #97, SEC Memo at 13). Contrary to the SEC's view on this admissions factor, Brewer is not required to rollover and settle with the SEC or admit publicly to violating the securities laws, especially in the middle of litigation that may ultimately include an appeal. In other words, Brewer has an absolute right to defend himself and put the SEC to its burden of proof on all elements of its liability and remedies claims. Indeed, the Courts have made clear that parties should not be punished for exercising their rights to defend themselves in court. See *SEC v. Johnson*, 595 F. Supp. 2d 40, 45 (D.D.C. 2009) ("Needless to say, [defendant] has a right to vigorously contest the SEC's allegations and was not required to 'behave like Uriah

Heep in order to avoid an injunction.'") (citing *SEC v. First City Financial Corp*., 890 F.2d 1215, 1229 (D.C. Cir. 1989)); see also *SEC v Shanahan*, No. CIV.07-2879 (JNE/JJG), 2010 WL 173819 at *15 (D. Minn. Jan. 13, 2010) (same).

Brewer for many years has dedicated his time, life, and resources to hold others, people of color, and the community as a whole together unselfishly and at the expense of himself and his family. Brewer directs a foundation that gives back to people in need. The SEC penalties not only disturbs Brewer but the community at large he serves.

**Sixth Factor: Losses caused to investors.** As discussed above in Brewer's opposition to the SEC's disgorgement claim, the SEC has failed to prove that Brewer's transaction caused losses to any investors. The SEC has not identified one single investor who lost money. Therefore, this sixth factor weighs in Brewer's favor and against imposing civil penalties.

**Seventh Factor: Brewer's cooperation.** Brewer's efforts to preserve his rights and argue issues of law should not be held against them.

## IV.    The Court Should Not Impose Permanent Injunctions and Life-Time Penny Stock Bars.

The SEC also seeks two forms of injunctive relief against Brewer: (1) permanently restrain and enjoin Brewer from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by committing or engaging in specified actions or activities relevant to the violations; and permanently restraining and enjoining Brewer from, directly or indirectly, acting or being associated with any broker or dealer or investment adviser.

The SEC is not automatically entitled to permanent injunctions and lifetime penny stock bars. Rather, in order to obtain a permanent injunction, the SEC must prove that there is a "realistic likelihood" that Brewer will violate the same provisions of the securities law again

unless they are permanently enjoined for life. See *Capital Solutions*, 28 F. Supp. 3d at 893 ("[T]he SEC must 'go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence.'").

The Court should also weigh the equities and take into consideration the fairness of the injunctive relief the SEC seeks. "[I]n deciding whether to grant injunctive relief, a district court is called upon to assess all those considerations of fairness that have been the traditional concern of equity courts." *SEC v. Manor House Ctrs., Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972). "Those considerations include not only the need to protect the public where the circumstances of the offense and of the offender give rise to a substantial risk of future harm, but also the stigma, humiliation, and loss of livelihood attendant to the imposition of the two injunctions sought here, whether temporary or permanent." *SEC v. Gentile*, 939 F.3d 549, 559 (3d Cir. 2019) (citation omitted). "In other words, the harsh effects of an SEC injunction demand that it not be imposed lightly or as a matter of course, that it be imposed only upon a meaningful showing of necessity, and when it is imposed, that it be as short and narrow as reasonably possible." Id. The threshold question, therefore, is whether the SEC has carried its burden of proving that there is a realistic likelihood—not just a mere possibility—that unless permanently enjoined for life, Brewer will once again engage in the same investment activities without registering as a dealer business under the securities laws. Because the SEC has not (and cannot) credibly make that showing, its requests for permanent injunctive relief should be denied.

In predicting the likelihood of a future violations, the courts consider the totality of the circumstances, including the following factors: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the violations; (3) the defendant's recognition of the wrongful nature of their conduct; (4) the likelihood, because of defendant's professional occupation, that

future violations might occur; and (5) the sincerity of the defendant's assurances against future violations. Other relevant factors include the egregiousness of the violation and the existence of past violations. *SEC v Shanahan*, No. CIV.07-2879, 2010 WL 173819 at *15 (D. Minn. Jan. 13, 2010) (citations omitted).

In assessing whether bar is appropriate, courts weigh several similar factors including: (1) the egregiousness of the defendant's securities law violations; (2) whether the defendant is a "repeat offender"; (3) the defendant's position in, or role with, the company when he engaged in the fraud; (4) the degree of scienter involved; (5) the defendant's economic stake in the violation; and (6) the likelihood of recurrence. Id. at *16 (factors for an officer and director bar) (citations omitted); see also *SEC v. Universal Exp*., Inc., 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007) ("The standard for imposing [a penny stock] bar essentially mirrors that for imposing an officer-and-director bar"), aff'd sub nom. *SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008); SEC v. Becker, No. 09 Civ. 5705 (SAS), 2010 WL 2710613, at *1 (S.D.N.Y. Jul. 8, 2010) (same).

Most of these factors have already been addressed above in the context of the SEC's request for civil penalties, and they favor Brewer not the SEC. With regard to the other factors, the courts place an emphasis on whether the defendants have past violations and are repeat offenders. See *SEC v. iShopNoMarkup.com, Inc*., No. 04 CV 4057, 2012 WL 716928, at *5 (E.D.N.Y. March 3, 2012) ("This factor [defendant not a repeat offender] weighs heavily against the imposition of an officer and director bar"); *SEC v. Standard*, No. 06 Civ. 7736, 2009 WL 196023, at *33 (S.D.N.Y. Jan. 27, 2009) (finding defendant's "lack of previous securities law violations" to be "particularly relevant" in its balancing of the industry bar factors).

The SEC argues that this factor weighs in its favor because of the *Winter* elements. The SEC opens that the first element is met because the SEC succeeded on the merits of its claim.

Then, the SEC concludes "irreparable harm" is met because Brewer will likely commit future violations. The SEC makes this claim without a peppercorn of evidence. The SEC also fails to mention to the court that Brewer has an unblemished history. The SEC misinterprets this factor. The repeat offender factor assesses whether the Defendants are recidivist violators of provisions of the federal securities laws. Brewer's character should be revealed that after the SEC action there were no repeat offenses" or violations after prosecution for committing the earlier violation. Again, and loudly advocated, Brewer has not previously been found to have violated any provision of the securities laws. As such, he is not recidivists or likely to repeat. This factor weighs in Brewer's favor rather than accepting speculatory jargon.

Accordingly, after considering the totality of the circumstances and weighing the equities, this Court should deny the SEC's motion for permanent injunctions. Should the Court decide, however, that some form of injunctive relief is necessary, the Court should exercise its discretion to impose time-limited injunctive relief instead of life-time injunctive relief. Even where defendants have engaged in fraud (which is obviously not the case here), the courts have weighed the equities and decided to impose time-limited injunctions of just several years instead of life-time injunctions. See *SEC v. Lemelson*, 596 F. Supp. 3d 227 (D. Mass. 2022), aff'd sub nom. 57 F.4th 17 (1st Cir. 2023), cert. denied sub nom. 144 S. Ct. 486 (2023) (five-year injunction in fraud case); *Findley*, 2024 WL 707264, at *12 (imposing four-year penny stock bar in fraud case); *SEC v. Gallison*, No. 115CV05456, 2023 WL 3004882 (S.D.N.Y. Feb. 4, 2023), report and recommendation adopted, 2023 WL 3090857, at *1 (S.D.N.Y. Apr. 26, 2023) (imposing five-year industry bar, and collecting cases imposing five-year bars instead of lifetime bars).

It should also be pointed out that in the *Almagarby* case, the Eleventh Circuit expressed concern that the SEC penny stock bars prohibit defendants from engaging in both unlawful and lawful penny stock transactions. 92 F.4th at 1322. The Court then held that the district court's order imposing a penny-stock bar for the dealer registration violation was an abuse of discretion and vacated the penny stock bar. Id. at 1326.

This Court should likewise decline to issue a bar against Brewer.

## V.   The Court Should Deny Injunction Against Association with Broker, Dealer or Investment Advisor.

In addition to the injunction permanently restraining and enjoining Brewer from violating Section 10(b) and Rule 10b-5, the SEC seeks to restrain Brewer from being associated with any broker, dealer or investment advisor. The SEC cites cases that are not remotely similar to the allegations with Brewer.  The SEC presents Brewer history with a person with knowledge but fails to promote that this is an isolated violation.  Brewer Capital is no longer a SEC-registered investment advisor and even more importantly not a defendant in this case.  The SEC should limit its enforcement to Defendant's only.

An injunction barring Brewer from association with broker-dealers, investment advisers, or penny stock transactions is a career-ending sanction reserved for the most egregious, fraudulent conduct. Courts should impose such bars only when future violations are probable, not merely possible.

Given the absence of scienter and lack of prior violations, a Court's indictment to such a sweeping prohibition would be unjustified and punitive. A limited injunction or compliance undertaking, if any, would adequately protect the public interest.

## VI.   The Court Should Deny Penny Stock Bar Request.

The SEC is not automatically entitled to permanent injunctions and life-time penny stock bars. Rather, in order to obtain a permanent injunction, the SEC must prove that there is a "realistic likelihood" that Brewer will violate the same provisions of the securities law again unless they are permanently enjoined for life. See *Capital Solutions*, 28 F. Supp. 3d at 893 ("[T]he SEC must 'go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence.'").

The Court should also weigh the equities and take into consideration the fairness of the injunctive relief the SEC seeks. "[I]n deciding whether to grant injunctive relief, a district court is called upon to assess all those considerations of fairness that have been the traditional concern of equity courts." *SEC v. Manor House Ctrs., Inc*., 458 F.2d 1082, 1102 (2d Cir. 1972). "Those considerations include not only the need to protect the public where the circumstances of the offense and of the offender give rise to a substantial risk of future harm, but also the stigma, humiliation, and loss of livelihood attendant to the imposition of the two injunctions sought here, whether temporary or permanent." *SEC v. Gentile*, 939 F.3d 549, 559 (3d Cir. 2019) (citation omitted). "In other words, the harsh effects of an SEC injunction demand that it not be imposed lightly or as a matter of course, that it be imposed only upon a meaningful showing of necessity, and when it is imposed, that it be as short and narrow as reasonably possible." Id.

The threshold question, therefore, is whether the SEC has carried its burden of proving that there is a realistic likelihood—not just a mere possibility—that unless permanently enjoined for life, Defendants will once again engage in the same investment activities without registering as a dealer business under the securities laws. Because the SEC has

not (and cannot) credibly make that showing, its requests for permanent injunctive relief and life-time penny stock bars should be denied.

In predicting the likelihood of a future violations, the courts consider the totality of the circumstances, including the following factors: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the violations; (3) the defendant's recognition of the wrongful nature of their conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations. Other relevant factors include the egregiousness of the violation and the existence of past violations. *SEC v Shanahan*, No. CIV.07-2879, 2010 WL 173819 at *15 (D. Minn. Jan. 13, 2010) (citations omitted). In assessing whether a penny stock bar is appropriate, courts weigh several similar factors including: (1) the egregiousness of the defendant's securities law violations; (2) whether the defendant is a "repeat offender"; (3) the defendant's position in, or role with, the company when he engaged in the fraud; (4) the degree of scienter involved; (5) the defendant's economic stake in the violation; and (6) the likelihood of recurrence. Id. at *16 (factors for an officer and director bar) (citations omitted); see also *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007) ("The standard for imposing [a penny stock] bar essentially mirrors that for imposing an officer-and-director bar"), aff'd sub nom. *SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008); *SEC v. Becker*, No. 09 Civ 5705 (SAS), 2010 WL 2710613, at *1 (S.D.N.Y. Jul. 8, 2010) (same).

## <u>CONCLUSION</u>

The alleged gains total only $35,178.00. Imposing civil penalties exceeding three times that amount and barring Brewer from all participation in penny stock or the securities industry is

grossly disproportionate to the financial harm and conduct alleged. The Court should apply

equitable discretion to ensure the remedies serve deterrence rather than punishment.

Dated: October 20, 2025                              Respectfully submitted,

                                                     **THE HUTTON FIRM, PLLC**


                                                     *s/Lee A. Hutton, III*
                                                     _____
                                                     Lee A. Hutton, III, MN# 0327992
                                                     333 South Seventh Street
                                                     Suite 2150
                                                     Minneapolis, Minnesota 55402
                                                     (612) 805-4619
                                                     lhutton@thehuttonfirm.com
                                                     **ATTORNEYS FOR DEFENDANT**

## **WORD COUNT CERTIFICATION**

Pursuant to Rule 5(B) of the Court's Individual Rules of Practices in Civil Cases, the undersigned certifies that this memorandum of law is 5119 words long and therefore, complies with the Court's word count limitation.

*s/Lee A. Hutton, III*
Attorney For Defendant
